# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re | Case No. 15-12342-WRS |
| | Chapter 13 |
| ANGELA CAMPBELL, | |
|     Debtor | |
| ANGELA CAMPBELL, | |
|     Plaintiff | Adv. Pro. No. 16-1013-WRS |
| v. | |
| DENNIS SCOTT CARRUTHERS, and D. SCOTT CARRUTHERS, A Professional Law Corporation, | |
|     Defendants | |

## MEMORANDUM DECISION

This adversary proceeding came before the Court for a damages hearing on May 25, 2016. Plaintiff Angela Campbell alleges that Defendants Dennis Scott Carruthers and his law firm have committed multiple violations of the automatic stay and the Fair Debt Collection Practices Act. The Defendants have not answered and the Court has entered default against them. Plaintiff appeared at the damages hearing in person and through her counsel. The Defendants did not appear. For the reasons set forth below, the Court enters JUDGMENT FOR THE PLAINTIFF.

## I. FACTS & PROCEDURAL HISTORY

Plaintiff Angela Campbell ("Campbell") filed Chapter 13 bankruptcy on November 12, 2015. (Case No. 15-12342, Doc. 1). On her Schedule F, she listed roughly $10,000 in student loan debt owed to the United States Department of Education and Navient, and Navient filed a proof of claim for $10,223.59. (Case No. 15-12342, Doc. 1, Claim 5). Her confirmed plan provides that property of the estate remains so after confirmation. (Docs. 2 & 21). She is still in bankruptcy.

Defendant Dennis Scott Carruthers is a California attorney who practices under the firm name "D. Scott Carruthers, A Professional Law Corporation" (collectively "Carruthers"). On January 7, 2016, an individual named Brian Bell ("Bell") called Campbell and left the following voice message on her phone:

> Angela Campbell, this is Brian Bell at the Attorney's office Scott Caruthers. Give me a call here we need to speak. Reach me back at 1-800-495-8682. My direct extension here is 612 again this is Brian Bell calling from the Attorney's office Scott Caruthers.

(Ex. 1) (underline and misspellings in original). Campbell testified that when she returned the call Bell informed her that he was an attorney[1] for the "ATI school" and that she informed him she was in bankruptcy and had listed the debt. Bell informed Campbell that the bankruptcy "did not matter" because it was unrelated to the debt, and Campbell referred him to her bankruptcy

---

[1] A search of the California State Bar's directory revealed no attorney with an active license with a name spelled "Brian Bell" or something similar. This suggests that Bell is a non-attorney employee in Carruthers's office who may be passing himself off as an attorney.

attorney. Bell hung up, but called Campbell back about ten minutes later and stated that the bankruptcy was unrelated, that she owed approximately $4,000, and threatened her that if she did not pay that amount or allow him to start debiting her bank account, that he would place a garnishment on her wages. When Campbell informed Bell that she could not afford to have her wages garnished because she was a single parent, he said that did not matter. In order to prevent Bell from garnishing her wages, Campbell provided him with her debit card number. She asked Bell to only take out $25, but he informed her that he required $50. She said she was only paid bi-weekly, and he said he would take out $50 every two weeks. Campbell again asked Bell not to take that much out because she does not make much money, but Bell refused.

On January 21, 2016, Carruthers withdrew $50 from Campbell's bank account. (Ex. 2). Campbell did not have sufficient funds in her account and incurred a $28 overdraft fee as a result. She testified that she incurred an additional $200 in overdraft fees in the days that followed as a result of Carruthers's action. Campbell eventually cancelled her debit card on the advice of her attorney.

On February 11, 2016, Bell again called Campbell and left the following voice message on her phone:

> Angela Campbell Brian Bell here with the attorney's office Scott Caruthers give me a call back here at <u>1-800-495-8682</u>.

(Ex. 3) (grammatical errors and underline in original). Bell also called Campbell at her place of employment and demanded to know why he could not debit more money from her account. Campbell told him that she had cancelled her debit card on the advice of her attorney and asked him to leave her alone. According to Campbell, Bell responded "well, I'm not going to leave you

-3-

Case 16-01013    Doc 17    Filed 06/14/16    Entered 06/14/16 10:38:02    Desc Main
Document    Page 3 of 15

alone because you owe me this money." On February 15, 2016, Carruthers debited another $50 from Campbell's bank account, and Campbell incurred another $28 overdraft fee as a result. (Ex. 4). Campbell's bank statement reflects that she was only able to bring her bank account current through the use of a payday loan. (Ex. 4).

Campbell sued Carruthers and his firm for violations of the automatic stay and the Fair Debt Collection Practices Act ("FDCPA") on February 3, 2016. (Doc. 1). Carruthers was served with the summons on February 8. (Doc. 4). On February 16, Campbell amended her complaint to reflect Carruthers's and Bell's ongoing conduct. Carruthers never answered or entered an appearance, and the Clerk of Court entered default against him on March 31, 2016. (Doc. 10). This damages hearing followed.

## II. ANALYSIS

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a), and the District Court's General Order of reference dated April 25, 1985.

### A. Adjudicatory Power

Campbell's claim that the automatic stay has been violated is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Her FDCPA claim is non-core, but Carruthers was served with the complaint and has not refused consent to this Court's adjudication of that claim. In <u>Wellness International Network, Ltd. v. Sharif</u>, 135 S. Ct. 1932 (2015), the Supreme Court held that a litigant may waive his right to an Article III adjudicator by failing to timely raise it. <u>Wellness Int'l Network</u>, 135 S. Ct. at 1947-48. The Supreme Court stated that "the key inquiry is whether the litigant or counsel was made aware of the need for consent and the right to refuse it, and still

-4-

voluntarily appeared to try the case before the non-Article III adjudicator." Id. at 1948 (internal quotation marks omitted). This Court found such a waiver in a case where the defendant answered, litigated for two years before refusing consent, and failed to appear at trial. *See* Wilkins v. AmeriCorp Inc. (In re Allegro Law LLC), 545 B.R. 675, 700 (Bankr. M.D. Ala. 2016). The Court has also found a waiver where the defendants litigated and never refused consent. *See* Feggins v. LVNV Funding, LLC (In re Feggins), 540 B.R. 895, 900 (Bankr. M.D. Ala. 2015).

This case is distinguishable from Allegro Law and Feggins because Carruthers has not litigated before this Court at all. Nevertheless, the Court concludes that Carruthers has impliedly consented to the Court's adjudication of Campbell's FDCPA claim. The summons that was served on Carruthers prominently featured the following warning:

> **IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

(Doc. 2) (capitalization and bold type in original). As an attorney, Carruthers could not have failed to realize the meaning of this language or the ramifications of choosing to ignore this lawsuit. Courts considering this issue in identical circumstances both before and after Wellness International Network have determined that a defendant's failure to litigate after receipt of a summons with the above-quoted language amounts to the defendant's implied consent to bankruptcy court adjudication. *E.g.*, Hopkins v. M & A Ventures (In re Hoku Corp.), 61 Bankr. Ct. Dec. 257, 2015 WL 8488949, *2-3 (Bankr. D. Idaho Dec. 10, 2015); Executive Sounding Bd.

Assocs. Inc. v. Advanced Mach. & Eng'g Co. (In re Oldco M Corp.), 484 B.R. 598, 614-15 (Bankr. S.D.N.Y. 2012). To hold otherwise would turn the law of waiver, consent, and default judgments on its head. The Court agrees with and adopts the reasoning of Hoku and Oldco M, and holds that a defendant who receives notice of an adversary proceeding against him in bankruptcy court and fails to defend himself impliedly consents to the bankruptcy court's adjudication under 28 U.S.C. § 157(c)(2).

### B. Liability

#### 1. Willful Violation of the Automatic Stay

The filing of a bankruptcy petition "operates as a stay, applicable to all entities, of . . . any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case. . . ." 11 U.S.C. § 362(a)(6). The automatic stay also prohibits "any act to obtain possession of property of the estate or property from the estate or to exercise control over property of the estate" regardless of when the underlying claim arose. 11 U.S.C. § 362(a)(3). Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). In Chapter 13 bankruptcy, it also includes all such property that the debtor acquires after the commencement of the case. 11 U.S.C. § 1306(a)(1).

The Bankruptcy Code provides a statutory cause of action to redress willful violations of the automatic stay. Vaughn v. Cent. Miss. Credit Corp. (In re Vaughn), 542 B.R. 589, 598 (Bankr. M.D. Ala. 2015); see 11 U.S.C. § 362(k)(1). "Violations of the automatic stay are willful 'if the violator (1) knew of the automatic stay and (2) intentionally committed the violative act, regardless of whether the violator specifically intended to violate the automatic

stay.'" Id. (quoting Jove Eng'g, Inc. v. IRS (In re Jove Eng'g, Inc.), 92 F.3d 1539, 1555 (11th Cir. 1996)).  Campbell has the burden of proving the violation and the defendant's willfulness by a preponderance of the evidence.  Id. (citing Grine v. Chambers (In re Grine), 439 B.R. 461, 466 (Bankr. N.D. Ohio 2010).

Carruthers clearly violated the automatic stay provided by 11 U.S.C. §§ 362(a)(3) and (a)(6).  The money in Campbell's bank account was property of the estate, and Carruthers's conduct in debiting her account was an act to gain control of it.  See 11 U.S.C. § 362(a)(3).  The fact that it had a negative balance when the February 15 debit occurred does not negate this conclusion because it merely increased the debt Campbell owed to the bank, thereby increasing the bank's claim against Campbell and forcing Campbell to deposit more money to bring her account current.  Moreover, Campbell's student loan debt arose pre-petition, and the phone calls Bell made to her on Carruthers's behalf were obvious attempts to collect it from her.  See 11 U.S.C. § 362(a)(6).

Carruthers's violations were willful.  Bell knew that Campbell was in bankruptcy no later than January 7, 2016, when she informed him of the fact.  As Bell was holding himself out as Carruthers's agent, the Court may impute that knowledge to Carruthers himself.  Even if Bell was somehow a rogue actor, however, Carruthers and his firm received notice that Campbell was suing them for violating the automatic stay on February 8, yet proceeded to violate the automatic stay again one week later by debiting Campbell's bank account.  The Eleventh Circuit held in Jove Engineering that a defendant need only intend the conduct that violated the stay to willfully do so.  Jove Eng'g, 92 F.3d at 1555; see, e.g., Vaughn, 542 B.R. at 598-99 (defendant's mistaken garnishment due to avoidable spelling error provided the requisite intent).  This, however,

-7-

appears to be the rare case where the defendant not only intended the violative conduct, he actually intended to violate the automatic stay itself. Bell stated multiple times to Campbell that her bankruptcy "did not matter" and that he "would not leave her alone," and made multiple harassing phone calls to her home and work. Carruthers debited Campbell's bank account even after he learned he was being sued. A more blatant example of willfulness is difficult to imagine.

### 2. Fair Debt Collection Practices Act

The FDCPA applies to "debt collectors," which it defines as "any person who uses any instrumentality of interstate commerce . . . the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This includes falsely representing that an individual is an attorney, § 1692e(3), implying that nonpayment will result in the garnishment of someone's wages when doing so would be illegal, § 1692e(4), threatening to take action that cannot legally be taken, § 1692e(5), and using a false representation or deceptive means to collect a debt or obtain information concerning a consumer, § 1692e(10). The FDCPA also prohibits debt collectors from using "unfair or unconscionable means to collect . . . any debt." 15 U.S.C. § 1692f. The Court must consider these provisions from the standpoint of the "least sophisticated consumer." LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1200-01 (11th Cir. 2010) (§ 1692f); Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1175 (11th Cir. 1985) (§ 1692e).

-8-

The Court finds that Carruthers is a debt collector who is subject to the FDCPA. His agent represented that he was attempting to collect a debt on behalf of another, and Carruthers's disciplinary records on file with the California State Bar, discussed *infra* Part III, indicate that he regularly attempts to collect debts on behalf of others. *See* In the Matter of Carruthers, Case No. 14-O-00594-DFM (Cal. Review Dept. 2015); *cf.* Montgomery v. GCFS, Inc., 237 Cal. App. 4th 724, 732 (2015) (Carruthers listed as defendant in crossclaim filed by consumer he had sued to collect debt). Moreover, when viewed from the perspective of the least sophisticated consumer, the conduct of Carruthers and his agent violated several provisions of the FDCPA. Campbell's testimony indicates that Bell passed himself off as an attorney to her, and a search of the California State Bar's directory reveals no attorney by that name that would likely be working for Carruthers. *See* 15 U.S.C. § 1692e(3). Bell coerced Campbell into giving him her debit card number by threatening to garnish her wages, when doing so would have violated the automatic stay. *See* 15 U.S.C. §§ 1692e(4), (5), and (10)[2]; *see also* 11 U.S.C. § 1306(a)(2). Finally, Bell's tactics in obtaining Campbell's debit card number in this manner and Carruthers's debits of her bank account certainly qualify as "unfair and unconscionable." *See* 15 U.S.C. § 1692f.[3]

---

[2] Campbell also asserted violations of 15 U.S.C. § 1692e(2), which prohibits the false representation of "the character, amount, or legal status of any debt[,]" in her complaint. (Docs. 1 and 8). The evidence does not support this allegation.

[3] Though not raised by Campbell, the Court notes in passing that Bell probably also violated 15 U.S.C. § 1692d, which prohibits debt collectors from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Viewed from the perspective of a consumer whose circumstances makes her "relatively more susceptible to harassment, oppression, or abuse[,]" Jeter, 760 F.2d at 1179 (adopting that standard to analyze § 1692d claims), Bell's repeated calls to Campbell's home and workplace were arguably harassing and oppressive. After all, they succeeded in getting Campbell to provide her debit card number so that he would leave her alone. Because Campbell did not raise a claim under § 1692d, the Court makes no specific factual findings on this point.

### C. Damages

The Bankruptcy Code permits an individual injured by a willful violation of the automatic stay to "recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). The plaintiff has the burden of proving damages resulting from a stay violation by a preponderance of the evidence. Vaughn, 542 B.R. at 598. A debt collector who fails to comply with the FDCPA is liable for any actual damages a plaintiff sustains as a result of the failure, plus statutory damages of up to $1,000, the costs of the action, and a reasonable attorney's fee. 15 U.S.C. § 1692k(a).

### 1. Emotional Distress

Campbell requested an award of $5,000 for emotional distress damages at the May 25 hearing. The Eleventh Circuit has stated that to recover damages for emotional distress arising from a willful violation of the automatic stay, "a plaintiff must (1) suffer significant emotional distress, (2) clearly establish the significant emotional distress, and (3) demonstrate a causal connection between the significant emotional distress and the violation of the automatic stay." Lodge v. Kondaur Capital Corp., 750 F.3d 1263, 1271 (11th Cir. 2014). The Eleventh Circuit has extended the Lodge standard to emotional distress damages arising out of a willful violation of the discharge injunction. *See* Green Point Credit, LLC v. McLean (In re McLean), 794 F.3d 1313, 1325-26 (11th Cir. 2015).

Neither the Eleventh Circuit nor any lower court has expressly applied Lodge to emotional distress damages arising out of FDCPA violations. However, the Lodge standard is broadly applicable to statutes outside the Bankruptcy Code, and the FDCPA is analogous to the automatic stay and discharge injunction in that they all seek to protect similarly situated

individuals. The Court sees no reason why the Eleventh Circuit would not extend the Lodge standard for proving emotional distress damages to FDCPA violations if it had the opportunity. The Court holds, therefore, that a FDCPA plaintiff claiming damages for emotional distress must satisfy the burden of proof set out in Lodge.

Campbell testified at the damages hearing that she has been extremely worried and has lost sleep as a result of Carruthers's and Bell's actions. She was also visibly distraught as she testified at the hearing. When pressed by the Court, however, Campbell also testified that she had not seen a doctor or missed any time from work as a result of the violative activity. The Court is sympathetic toward Campbell, but she has not satisfied the Eleventh Circuit's standard for proving emotional distress damages.

### 2. Actual Damages

Campbell presented evidence that Carruthers wrongfully debited $100 from her bank account and has not returned the money. As a result of his actions, Campbell incurred approximately $200 in overdraft charges on her bank account. These are direct and concrete damages Campbell suffered as a result of Carruthers's actions. The Court has held that the lost use of money wrongfully taken from a plaintiff can also give rise to compensable damages, *see* Vaughn, 542 B.R. at 600-01 (awarding $1,500 for the plaintiff's lost use of $600 for four months), but Campbell has not proven any cognizable injury arising out of the lost use of her money.

Costs and attorney's fees are actual damages under 11 U.S.C. § 362(k) when they are necessary to stop an ongoing stay violation or recover pre-litigation actual damages, Vaughn, 542 B.R. at 601, and the FDCPA expressly authorizes an award of costs and attorney's fees for

-11-

prevailing plaintiffs. 15 U.S.C. § 1692k(a)(3). Campbell's counsel informed the Court that she has incurred $3,250 in attorney's fees thus far. Given the Defendants' location and their utter disregard for this proceeding and for the law, the Court suspects she will incur far more costs and attorney's fees trying to collect this judgment. For now, the Court awards Campbell the $3,250 in attorney's fees she has already incurred, with leave to apply for any additional costs and attorney's fees she incurs afterward.

### 3. FDCPA Statutory Damages

In addition to actual damages, the FDCPA authorizes a statutory award of up to $1,000 per person. 15 U.S.C. § 1692k(a)(2)(A); *see also* Harper v. Better Bus. Servs., Inc., 961 F.2d 1561, 1563 (11th Cir. 1992) (FDCPA statutory damages cannot be awarded on a per-violation basis). In determining the amount of statutory liability, the Court must consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional[.]" 15 U.S.C. § 1692k(b)(1).

The Court readily concludes that the full $1,000 award is warranted here. Carruthers is an attorney in the business of debt collection who the Court presumes must be familiar with the FDCPA, making his violations clearly intentional. Moreover, he persisted in violating the FDCPA even after Campbell sued him for his conduct. Finally, his conduct was highly abusive in that he used repeated phone calls to coerce Campbell into giving him direct access to her bank account.

### 4. Punitive Damages

The Bankruptcy Code permits an award of punitive damages to redress willful violations of the automatic stay in "appropriate circumstances." 11 U.S.C. § 362(k)(1). "'Appropriate

-12-

circumstances' has been interpreted to require that the violator's acts be egregious, vindictive, malicious, or accompanied by bad faith." Hutchings v. Ocwen Fed. Bank (In re Hutchings), 348 B.R. 847, 913 (Bankr. N.D. Ala. 2006). "Five factors guide bankruptcy courts in determining whether an award of punitive damages is proper: (1) the nature of the defendant's conduct; (2) the nature and extent of the harm to the plaintiff; (3) the defendant's ability to pay; (4) the motives of the defendant; and (5) any provocation by the debtor." Vaughn, 542 B.R. at 602-03 (internal quotation marks omitted).

The circumstances of this case are unquestionably appropriate for punitive damages. As discussed above, Carruthers and Bird intentionally violated the automatic stay multiple times, and continued to do so even after Carruthers was sued. Carruthers's motives appear to extend beyond mere debt collection: they evince an intent to make a mockery of the bankruptcy system and the consumer protection laws altogether, and to enrich himself at the expense of debtors and other creditors who comply with the law. All this was done without any provocation on Campbell's part. Carruthers's conduct toward Campbell has been both egregious and malicious, and his status as an attorney makes it even more so.[4] Finally, Carruthers offered no evidence to show that he cannot pay a punitive damages award.

The Court will award Campbell $50,000 in punitive damages. The award is based not just on the egregiousness of Carruthers's conduct, but also on the Court's determination that such an amount is necessary to deter Carruthers from engaging in such conduct in the future. This is

---

[4] In Vaughn, the Court justified a punitive damages award in part on the defendant's use of non-attorneys to take legal action on its behalf as a cost-cutting measure. Vaughn, 542 B.R. at 603. The whole point of that discussion was to encourage creditors to use attorneys in their legal dealings to help prevent inadvertent violations of the law. When an attorney deliberately and intentionally violates the law, as Carruthers has done here, this objective becomes futile.

-13-

not a situation where a non-professional intended conduct that inadvertently violated the automatic stay. Carruthers is an attorney who undoubtedly knows what conduct the automatic stay prohibits, yet he chose to engage in that conduct anyway. Moreover, his attitude toward this litigation indicates that he is unconcerned about the potential consequences of his conduct. He did not answer or appear at the damages hearing. Worse, he continued to intentionally violate the automatic stay even after he was sued for violating the automatic stay. The Court surmises that Carruthers chose this course of action assuming that his liability from this case, and the difficulty Campbell faces in collecting it from him, would not justify the aggravation of complying with the law. In other words, it is apparent that Carruthers knowingly and intentionally violated the law because he believes he can get away with it. A punitive damages award of this size is necessary to deter further unlawful conduct.

### III. CONCLUSION

The Court closes with an observation regarding the temporal proximity of this case to Carruthers's professional disciplinary history. On October 15, 2015, the California State Bar suspended Carruthers for 60 days[5] based on his forgery of a witness's signature on a document that the witness had not reviewed; Carruthers then filed the document, under penalty of perjury, in a suit he had filed to collect a debt. In the Matter of Carruthers, Case No. 14-O-00594-DFM (Cal. Review Dept. 2015). The California State Bar reactivated Carruthers's license, subject to a lengthy probationary period, on December 14, 2015. *Supra* note 5. Carruthers began engaging

---

[5] Carruthers was technically suspended for 2 years, but all except 60 days of the suspension was stayed by the California State Bar. However, Carruthers was placed on probation for the remainder of the two-year period and is still on probation as of the date of this judgment.

in the unlawful conduct that provoked this litigation on January 7, 2016, less than one month after his return from suspension.

Needless to say, the Court is troubled that Carruthers's conduct in this case occurred so soon after his return from suspension. The California State Bar would also likely take a dim view of the timing and nature of Carruthers's activity. The Court additionally notes a possible ethical violation in that Campbell's testimony indicates that one of Carruthers's employees is falsely passing himself off as an attorney. In light of the egregiousness of Carruthers's violations of the law, as well as the recency of his professional discipline, the Court will send a copy of this memorandum decision to the California State Bar.

Defendant Dennis Scott Carruthers and his Defendant law firm willfully violated the Bankruptcy Code's automatic stay and violated several provisions of the Fair Debt Collection Practices Act. The Court will enter judgment for Plaintiff Angela Campbell in the amount of $54,550, which consists of $300 actual damages, $3,250 attorney's fees, $1,000 statutory damages, and $50,000 punitive damages. The Court will enter a separate judgment consistent with this decision.

Done this 14th day of June, 2016.

*[signature]*

United States Bankruptcy Judge

c: Anthony B. Bush, Attorney for Plaintiff
   Dennis Scott Carruthers
   Dennis Scott Carruthers, A Professional Law Corporation

-15-